**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

BRUCE KENTON JEFFERS,

    Petitioner,

vs.

UNITED STATES OF AMERICA,

    Respondent.

No. C16-3068-MWB
No. CR13-3033-MWB

**MEMORANDUM OPINION AND ORDER REGARDING RESPONDENT'S MOTION TO DISMISS PETITIONER'S § 2255 MOTION TO VACATE**

_____

**TABLE OF CONTENTS**

*I.*   *INTRODUCTION AND BACKGROUND* ............................................................ *2*
    *A.*   *Criminal Case Proceedings* ........................................................................ *2*
    *B.*   *Jeffers's § 2255 Proceeding* ...................................................................... *5*

*II.*   *LEGAL ANALYSIS* ........................................................................................... *5*
    *A.*   *Standards for § 2255 Motion* .................................................................... *5*
    *B.*   *Standards for Motions to Dismiss* ............................................................. *7*
    *C.*   *Procedural Default* .................................................................................... *9*
    *D.*   *Ineffective Assistance of Counsel* ............................................................. *9*
        *1.*   *Applicable standards* ..................................................................... *9*
        *2.*   *Strickland's "deficient performance" prong* ................................. *11*
        *3.*   *Strickland's "prejudice" prong* ...................................................... *13*
    *E.*   *Analysis of Jeffers's Claims* .................................................................... *14*
    *F.*   *Certificate of Appealability* ..................................................................... *16*

*III.*   *CONCLUSION* ................................................................................................ *17*

Respondent's Motion to Dismiss Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (docket no. 3), in

which respondent seeks dismissal of petitioner Bruce Jeffers's § 2255 motion because Jeffers's claims are procedurally defaulted, is before me for decision. Jeffers's appointed counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), asserting there are no meritorious issues concerning Jeffers's procedural default. Jeffers, in turn, filed a *pro se* brief in resistance to respondent's Motion to Dismiss.

## I. INTRODUCTION AND BACKGROUND
### A. Criminal Case Proceedings

Jeffers was arrested on August 5, 2013, and charged with state offenses. He was also charged in a federal Indictment, in this court, on September 19, 2013. The charges against Jeffers are separate counts of being a felon in possession of a firearm (Count 1) and being a felon in possession of ammunition (Count 2), in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e)(1).

On July 7, 2014, Jeffers pleaded guilty to both counts before United States Magistrate Judge Leonard T. Strand.[1] In a Report And Recommendation Concerning Guilty Plea, filed that same day, Judge Strand recommended that I accept Jeffers's plea. After the parties filed Waivers of any objections to the Report And Recommendation, I accepted Jeffers's guilty plea by Order, also filed July 7, 2014.

According to the Second Amended And Final Presentence Investigation Report (Second Amended PSIR) (docket no. 80), the offense conduct leading to Jeffers's guilty plea in this case is the following:

> On August 5, 2013, Fort Dodge, Iowa, police officers were dispatched to a domestic disturbance involving a firearm. They were advised that [Jeffers] had entered the residence of his estranged girlfriend and mother of his children, Julie Jensen, at [*******************], Fort Dodge, Iowa. Jensen advised that she was asleep on the couch with her daughter

---

[1] Magistrate Judge Strand was confirmed as a U.S. District Court Judge on February 12, 2016, and is now Chief Judge in the Northern District of Iowa.

> when [Jeffers] held her with one hand and put a gun in her face with the other. [Jeffers] threatened Jensen and told her not to call the police. Jensen advised the officers that she and [Jeffers] had been together since 1999 and that they separated in November 2012. She stated the defendant now had his own residence. [Jeffers] was located by officers as he was pulling into the garage at his residence located at 716 South 20th Street Fort Dodge, Iowa. Located in plain view on the front seat of [Jeffers's] truck were live rounds of .380 caliber ammunition. A loaded black Kel Tec .380 pistol with serial number L3U38 was located several feet from [Jeffers's] driveway behind a wire fence in the adjoining neighbor's yard. During his arrest and booking, [Jeffers] attempted to conceal and discard additional .380 caliber rounds of ammunition in the booking area of the jail.

Second Amended PSIR at ¶ 4. Jeffers, who was then 52 years old, was initially charged with first-degree burglary in the Iowa District Court for Webster County and, on October 11, 2013, he pleaded guilty to a lesser offense of second-degree burglary, and was sentenced to ten years in prison. *Id*. at ¶ 35.[2]

His arrest and conviction in this case were the latest in a long list of arrests and convictions for various kinds of criminal conduct by Jeffers over the last 36 years, beginning when Jeffers was 18 years old. The Second Amended PSIR identifies Jeffers's adult criminal convictions as follows: a September 19, 1981, conviction (on his April 7, 1981, arrest) for voluntary manslaughter in Brazoria County, Texas; a November 16, 1987, conviction (on his September 4, 1987, arrest) for arson of an inhabited structure or property in Orange County, California; a May 7, 1991, conviction (on his January 15, 1991, arrest) for felon in possession of a firearm in Riverside County, California; a September 10, 1991, conviction for evading an officer, willful disregard, in Orange County, California, and an

---

[2] At the time of the state sentencing, additional counts charging dominion or control of a firearm or offensive weapon by a felon and domestic abuse assault with intent to inflict bodily injury or displaying a weapon were dismissed. Second Amended PSIR at ¶ 35.

April 15, 2011, conviction (on his April 27, 2010, arrest) for possession of drug paraphernalia in Gila County, Arizona.

At the time of Jeffers's Indictment and guilty plea, the prior convictions listed in the Indictment would likely have qualified as predicate "violent felony" offenses for an Armed Career Criminal penalty pursuant to the "residual clause" of 18 U.S.C. § 924(e)(2)(B)(ii). Thus, Jeffers potentially faced a mandatory minimum sentence of fifteen years. 18 U.S.C. § 924(e)(1). Early drafts of the PSIR scored Jeffers as an "armed career criminal," calculated his mandatory minimum sentence as fifteen years and his maximum sentence as life imprisonment, his offense level as 31, his criminal history category as VI, and his advisory sentencing guidelines range as 188 to 235 months.

On June 26, 2015, however, the United States Supreme Court handed down its decision in *Johnson v. United States*, ___ U.S. ___, 135 S. Ct. 2551 (2015), in which it held that the "residual clause" of the Armed Career Criminal Act (ACCA), violates the Constitution's guarantee of due process. Consequently, the Second Amended PSIR, filed on June 29, 2015, calculated Jeffers's statutory maximum sentence as ten years, with no mandatory minimum sentence, his offense level as 15, his criminal history category as I (with only one criminal history point), and his advisory sentencing guidelines range as 18 to 24 months, a dramatic difference from the prior calculations.

Jeffers's sentencing hearing was reset and the prosecution filed a Motion For Upward Departure And/Or Upward Variance. Jeffers filed a timely Resistance To Government's Motion For Upward Departure Or Variance.

At sentencing, I found that a substantial upward variance was compelled in this case. *See Gall*, 552 U.S. at 46. Accordingly, I imposed a substantial upward variance from Jeffers's advisory guidelines sentencing range to 108 months of incarceration on each of the Counts, with those sentences to run concurrently, and concurrently with Jeffers's remaining sentence on the state conviction, followed by the maximum term of 3 years of supervised release. Jeffers did not appeal his conviction or sentence.

### B. *Jeffers's § 2255 Proceeding*

On May 20, 2016, Jeffers filed a Motion to Rescind Upward Variance. I denied Jeffers's motion. On May 31, 2016, Jeffers filed a Motion to Reconsider Denial of Motion to Rescind Upward Variance. I granted Jeffers's Motion for Reconsideration and directed the Clerk of Court to file it as a Motion Under § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (docket no. 1). In his § 2255 motion, Jeffers seeks rescindment of the upward variance he received in his sentence.

Respondent filed a Motion to Dismiss in which it argues that Jeffers's § 2255 motion should be dismissed as procedurally barred or not cognizable under § 2255. Jeffers's counsel filed a brief asserting the absence of merited issues and seeking to withdraw as counsel, pursuant to *Anders v. California*, 386 U.S. 738 (1967).[3] Counsel has served Jeffers with his *Anders* brief, in accordance with *Anders*, 386 U.S. at 744, to permit Jeffers an opportunity to independently point the court to any issues he deems meritorious. Jeffers filed a *pro se* brief in resistance to respondent's motion and contends that his § 2255 motion is not procedurally barred because his counsel was ineffective.

### II. LEGAL ANALYSIS
#### A. *Standards for § 2255 Motion*

Section 2255 of Title 28 of the United States Code provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the

---

[3]Jeffers's counsel's Motion to Withdraw is granted (docket no. 10).

>     court which imposed the sentence to vacate, set aside or correct
>     the sentence.

28 U.S.C. § 2255; *see Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007) ("Under 28 U.S.C. § 2255 a defendant in federal custody may seek post conviction relief on the ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."); *Bear Stops v. United States*, 339 F.3d Cir. 2003) ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). Thus, a motion pursuant to § 2255 "is 'intended to afford federal prisoners a remedy identical in scope to federal Habeas corpus.'" *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1993) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)); *accord Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (quoting *Wilson*).

One "well established principle" of § 2255 law is that "'[i]ssues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28 U.S.C. § 2255.'" *Theus v. United States*, 611 F.3d 441, 449 (8th Cir. 2010) (quoting *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001)); *Bear Stops*, 339 F.3d at 780. One exception to that principle arises when there is a "miscarriage of justice," although the Eighth Circuit Court of Appeals has "recognized such an exception only when petitioners have produced convincing new evidence of actual innocence," and the Supreme Court has not extended the exception beyond situations involving actual innocence. *Wiley*, 245 F.3d at 752 (citing cases, and also noting that "the Court has emphasized the narrowness of the exception and has expressed its desire that it remain 'rare' and available only in the 'extraordinary case.'" (citations omitted)). Just as § 2255 may not be used to relitigate issues raised and decided on direct appeal, it also ordinarily "is not available to correct errors which could have been raised at trial or on direct appeal." *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (per curiam). "Where a defendant has procedurally

6

defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal quotations and citations omitted).

"Cause and prejudice" to resuscitate a procedurally defaulted claim may include ineffective assistance of counsel, as defined by the *Strickland* test, discussed below. *Theus*, 611 F.3d at 449. Indeed, *Strickland* claims are not procedurally defaulted when brought for the first time pursuant to § 2255, because of the advantages of that form of proceeding for hearing such claims. *Massaro v. United States*, 538 U.S. 500 (2003). Otherwise, "[t]he Supreme Court recognized in *Bousley* that 'a claim that "is so novel that its legal basis is not reasonably available to counsel" may constitute cause for a procedural default.'" *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (quoting *Bousley*, 523 U.S. at 622, with emphasis added, in turn quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). The "actual innocence" that may overcome either procedural default or allow relitigation of a claim that was raised and rejected on direct appeal is a demonstration "'that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) (quoting *Bousley*, 523 U.S. at 623); *see also House v. Bell*, 547 U.S. 518, 536-37 (2006). "'This is a strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support a [conviction on the challenged offense].'" *Id*. (quoting *McNeal v. United States*, 249 F.3d 747, 749-50 (8th Cir. 2001)).

### B. *Standards for Motions to Dismiss*

Section 2255 proceedings are civil in nature and, therefore, governed by the Federal Rules of Civil Procedure, *see, e.g., Mandacina v. United States*, 328 F.3d 995, 1000 & n.3 (8th Cir. 2003), including Rule 12(b), which provides for a pre-answer motion to dismiss on various grounds. Although factual "plausibility" is ordinarily the central focus of Rule

7

12(b)(6) motions to dismiss under the *Twom-bal* standard, various federal Circuit Courts of Appeals have expressly recognized, and the Eighth Circuit Court of Appeals has suggested, that the *Twom-bal* standard still permits dismissal pursuant to Rule 12(b)(6) of a claim that lacks a cognizable legal theory, in addition to permitting dismissal for factual implausibility. *See, e.g., Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Ball v. Famiglio*, 726 F.3d 448, 469 (3d Cir. 2013) (a claim may be dismissed if it is based on an "indisputably meritless legal theory"); *Commonwealth Property Advocates, L.L. C. v. Mortgage Electronic Registration Sys., Inc.,* 680 F.3d 1194, 1202 (10th Cir. 2011) ("Dismissal is appropriate if the law simply affords no relief."); *see also Philadelphia Indem. Ins. Co. v. Youth Alive, Inc*., 732 F.3d 645, 649 (6th Cir. 2013) (recognizing that a claim must plead sufficient facts under a "viable legal theory"); *cf. Brown v. Mortgage Electronic Registration Sys., Inc.*, 738 F.3d 926, 933 n.7, 934 (8th Cir. 2013) (noting the appellate court's agreement "with the district court's sound reasoning that the facts pled do not state a cognizable claim under Arkansas law" and holding that dismissal pursuant to Rule 12(b)(6) was appropriate, because Arkansas law did not impose the purported duty on which an unjust enrichment claim and a state statutory claim were based). It is precisely the alleged lack of a cognizable legal theory for Jeffers's § 2255 Motion that is the proper basis for the respondent's Motion To Dismiss in this case.

On the respondent's Motion, I may consider the docket in the underlying criminal case, from which Jeffers seeks § 2255 relief, because it is " 'incorporated by reference or integral to [his] claim,'" *Miller v. Redwood Toxicology Lab., Inc*., 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quoting 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004)), and because it is "'necessarily embraced by the pleadings.'" *Whitney*, 700 F.3d at 1128 (quoting *Mattes v. ABC Plastics, Inc*., 323 F.3d 695, 697 n. 4 (8th Cir. 2003)).

## C.     Procedural Default

Section 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of cause and prejudice, or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice. *See Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993). "[C]ause and prejudice" to overcome such default may include "ineffective assistance of counsel." *Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005); *see generally Murray v. Carrier*, 477 U.S. 478 (1986). The Eighth Circuit Court of Appeals has expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings."). Accordingly, the "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro*, 538 U.S. at 509. Because I construe Jeffers's claims to be for ineffective assistance of counsel, I will consider them on the merits.

## D.     Ineffective Assistance of Counsel
### 1.     Applicable standards

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. Thus, a criminal defendant is constitutionally entitled to the effective assistance of counsel both at trial and on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Bear Stops*, 339 F.3d at 780; *see also Steele v United States*, 518 F.3d 986, 988 (8th Cir. 2008). The Eighth Circuit Court of Appeals has recognized that, if a defendant was denied the effective assistance of counsel guaranteed by the Sixth Amendment, "then his sentence was imposed 'in violation of the

Constitution,' . . . and he is entitled to relief" pursuant to § 2255(a). *King v. United States*, 595 F.3d 844, 852 (8th Cir. 2010). Both the Supreme Court and the Eighth Circuit Court of Appeals have expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal, because such a claim often involves facts outside of the original record. *See Massaro*, 538 U.S. at 504-05 (2003); *United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings.").

The Supreme Court has reiterated that "'the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation . . . [but] simply to ensure that criminal defendants receive a fair trial.'" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). That being the case, "'[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Id.* (quoting *Strickland*, 466 U.S. at 686, with emphasis added). To assess counsel's performance against this benchmark, the Supreme Court developed in *Strickland* a two-pronged test requiring the petitioner to show "both deficient performance by counsel and prejudice." *See Strickland*, 466 U.S. at 687-88, 697; *see also Knowles v. Mirzayance*, 556 U.S. 111, 129 S. Ct. 1411, 1419 (2009). "'Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.'" *Gianakos v. United States*, 560 F.3d 817, 821 (8th Cir. 2009) (quoting *Strickland*, 466 U.S. at 687).

Although the petitioner must prove both prongs of the *Strickland* analysis to prevail, the Supreme Court does not necessarily require consideration of both prongs of the *Strickland* analysis in every case, nor does it require that the prongs of the *Strickland* analysis be considered in a specific order. As the Court explained in *Strickland*,

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, *there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.* In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Strickland*, 466 U.S. at 697 (emphasis added).[4]

I will consider the two prongs of the *Strickland* analysis in a little more detail, before analyzing Jeffers's claims.

### 2. *Strickland's "deficient performance" prong*

"The performance prong of *Strickland* requires a defendant to show '"that counsel's representation fell below an objective standard of reasonableness."'" *Lafler*, 132 S. Ct. at 1384 (quoting *Hill v. Lockart*, 474 U.S. 52, 57 (1985), in turn quoting *Strickland,* 466 U.S.

---

[4] Although the Court in *Strickland* found that it was only necessary to consider the "prejudice" prong, so that it did not reach the "deficient performance" prong, the Eighth Circuit Court of Appeals has repeatedly held that it need not consider the "prejudice" prong, if it determines that there was no "deficient performance." *See, e.g., Gianakos v. United States*, 560 F.3d 817, 821 (8th Cir. 2009) ("'We need not inquire into the effectiveness of counsel, however, if we determine that no prejudice resulted from counsel's alleged deficiencies." (quoting *Hoon v. Iowa*, 313 F.3d 1058, 1061 (8th Cir. 2002), in turn citing *Strickland*, 466 U.S. at 697)); *Ringo v. Roper*, 472 F.3d 1001, 1008 (8th Cir. 2007) ("Because we believe that the Missouri Supreme Court did not unreasonably apply *Strickland* when it determined that counsel's decision not to call Dr. Draper fell within the wide range of reasonable professional assistance, we need not consider whether counsel's decision prejudiced Mr. Ringo's case."); *Osborne v. Purkett*, 411 F.3d 911, 918 (8th Cir. 2005) ("Because Osborne did not satisfy the performance test, we need not consider the prejudice test.").

at 688); *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 688). To put it another way, "[t]he challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 687)).

In evaluating counsel's performance, the reviewing court must not overlook "'the constitutionally protected independence of counsel and . . . the wide latitude counsel must have in making tactical decisions.'" *Cullen*, 131 S. Ct. at 1406 (quoting *Strickland*, 466 U.S. at 589). Thus,

> [b]eyond the general requirement of reasonableness, "specific guidelines are not appropriate." [*Strickland*, 466 U.S.], at 688, 104 S. Ct. 2052. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions ...." *Id.*, at 688–689, 104 S. Ct. 2052. *Strickland* itself rejected the notion that the same investigation will be required in every case. *Id.*, at 691, 104 S. Ct. 2052 ("[C]ounsel has a duty to make reasonable investigations *or* to make a reasonable decision that makes particular investigations unnecessary" (emphasis added)). It is "[r]are" that constitutionally competent representation will require "any one technique or approach." *Richter*, 562 U.S., at ——, 131 S. Ct., at 779.

*Cullen*, 131 S. Ct. at 1406-07.

The *Strickland* standard of granting latitude to counsel also requires that counsel's decisions must be reviewed in the context in which they were made, without "the distortions and imbalance that can inhere in a hindsight perspective." *Premo v. Moore*, 131 S. Ct. 733, 741 (2011); *see also id.* at 745 (reiterating that "hindsight cannot suffice for relief when counsel's choices were reasonable and legitimate based on predictions of how the trial would proceed" (citing *Richter*, 131 S. Ct. 770)); *Rompilla v. Beard*, 545 U.S. 374, 381 (2005) ("In judging the defense's investigation, as in applying *Strickland* generally, hindsight is discounted by pegging adequacy to 'counsel's perspective at the

12

time' investigative decisions are made, 466 U.S., at 689, 104 S. Ct. 2052, and by giving a 'heavy measure of deference to counsel's judgments,' *id.*, at 691, 104 S. Ct. 2052."). This is so, because "[u]nlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge," and because "[i]t is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.'" *Richter*, 131 S. Ct. at 788 (quoting *Strickland*, 466 U.S. at 689, and also citing *Bell v. Cone*, 535 U.S. 685, 702 (2002), and *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). In short, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* (quoting *Strickland*, 466 U.S. at 690). Furthermore,

> *Strickland* specifically commands that a court "must indulge [the] strong presumption" that counsel "made all significant decisions in the exercise of reasonable professional judgment." 466 U.S., at 689–690, 104 S. Ct. 2052. The [reviewing court] [i]s required not simply to "give [the] attorneys the benefit of the doubt," but to affirmatively entertain the range of possible "reasons [trial] counsel may have had for proceeding as they did."

*Cullen*, 131 S. Ct. at 1407 (internal citations to the lower court opinion omitted); *Richter*, 131 S. Ct. at 787 ("A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range" of reasonable professional assistance.'" (quoting *Strickland*, 466 U.S. at 689)).

### 3. *Strickland's "prejudice" prong*

"To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler*, 132 S. Ct. at 1384 (quoting *Strickland*, 466 U.S. at 694). The Court has explained more specifically what a "reasonable probability" means:

> "A reasonable probability is a probability sufficient to undermine confidence in the outcome." [*Strickland*, 466 U.S. at 694]. That requires a "substantial," not just "conceivable," likelihood of a different result. *Richter*, 562 U.S., at ——, 131 S. Ct., at 791.

*Cullen*, 131 S. Ct. at 1403. Ultimately, a showing of "prejudice" requires counsel's errors to be "'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 131 S. Ct. at 787-88 (quoting *Strickland*, 466 U.S. at 687).

### E. *Analysis of Jeffers's Claims*

Jeffers claims his counsel should have presented testimony of friends, law enforcement officers, and other community members to demonstrate: (1) that he was not in any serious trouble since 1991; (2) he was active in his children's lives and interests; (3) he coached baseball as a volunteer through the Fort Dodge YMCA through Nick Ford and seriously devoted his time to fostering a law-abiding stature after serving several prior prison terms; and (4) Rod Strait, the Webster County Sheriff, and Jeffers's neighbor, never had a bad word to say about him. Jeffers argues that if his counsel had presented this evidence, I would not have varied upward in his sentence.

My review of the sentencing transcript reveals that Jeffers's counsel did argue at sentencing that Jeffers had substantially rehabilitated himself since 1999, when he met Julie Jensen and argued that Jeffers's three most serious felony convictions-for manslaughter, arson, and felony evading, all occurred over 25 years ago. Defense counsel opted not to employ Jeffers's characterization of his criminal record since 1991 as not being "serious." Counsel made this decision in light of the nature of Jeffers's convictions, for being a felon in possession, and multiple battery and domestic abuse convictions, and his determination that such a characterization would not be favorably received. Instead, defense counsel chose to point out that Jeffers's 1999 Arizona domestic assault conviction involved an adult male and that Jeffers had a history of getting into bar fights when intoxicated.

14

Defense counsel followed up on Jeffers's suggestions for character witnesses, but ascertained that Jeffers had an unrealistic view of how he was regarded by people in the community. Instead of supporting Jeffers's position, Jeffers's proposed character witnesses would have related that Jeffers "thinks he is so smooth at fooling people but that is not the case" and another would have related that "he remembered Jeffers breaking into a house right next to his and holding a gun up to a female's head while a small child was asleep in the same bed as she was." Defense Counsel's Aff. at ¶ 5.

As I discussed above, to satisfy *Strickland's* two-part test for evaluating claims that counsel performed so incompetently that Jeffers's sentence should be reversed, he must prove that his counsel's representation fell below an objective reasonableness standard and that there is a reasonable probability that, but for counsel's unprofessional error, the result would have been different. *See Strickland*, 466 U.S. at 407-410. I find defense counsel's decisions to not use Jeffers's characterization of his criminal convictions since 1991 as not serious and to not call Jeffers's proposed character witnesses were objectively reasonable under the circumstances. Because Jeffers was before me for sentencing on a firearms violation, Jeffers's attorney may have reasonably concluded that it was not in Jeffers's interests to label his previous firearms conviction as not being serious. Jeffers's attorney also may have reasonably concluded that it was in Jeffers's interests to avoid giving the prosecution an opportunity to elicit damaging testimony from the proposed character witnesses. In reaching this conclusion, I have followed the teaching of the Supreme Court and "indulge[d] a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance. . ." *Strickland*, 466 U.S. at 689. Thus, I conclude that defense counsel's strategy at Jeffers's sentencing did not constitute ineffective assistance of counsel because it was a conscious, reasonably informed decision made by counsel with an eye to benefiting Jeffers. As the Eighth Circuit Court of Appeals has instructed, "'strategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. . .'" *United States v. Orr*, 636 F.3d 944,

952 (8th Cir. 2011) (quoting *Strickland*, 466 U.S. at 690–91); *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1998) ("Informed strategic decisions of counsel are given a heavy measure of deference and will not be second guessed."). Accordingly, respondent's Motion to Dismiss is granted and Jeffers's § 2255 motion is denied.

### F. Certificate of Appealability

Jeffers must make a substantial showing of the denial of a constitutional right in order to be granted a certificate of appealability in this case. *See Miller-El v. Cockrell*, 537 U.S. 322 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Moreover, the United States Supreme Court reiterated in *Miller-El v. Cockrell* that "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). I determine that Jeffers's motion does not present questions of substance for appellate review and, therefore, does not make the requisite showing to satisfy § 2253(c). *See* 28 U.S.C. § 2253(c)(2); FED. R. APP. P. 22(b). Accordingly, with respect to Jeffers's claims, I do not grant a certificate of appealability pursuant to 28 U.S.C. § 2253(c). Should Jeffers wish to seek further review of his petition, he may request a certificate of appealability from a judge of the United States Court of Appeals for the Eighth Circuit. *See Tiedman v. Benson*, 122 F.3d 518, 520-22 (8th Cir. 1997).

### *III.    CONCLUSION*

For the reasons discussed above, respondent's Motion to Dismiss is granted (docket no. 3) and Jeffers's Motion under 28 U.S.C. § 2255 is denied in its entirety (docket no. 1). This case is dismissed.  No certificate of appealability will issue for any claim or contention in this case.

**IT IS SO ORDERED**.

**DATED** this 15th day of February, 2017.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA